J-A04021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| ALDIS RUTYNA AND MARY JANE RUTYNA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| WILLIAM S. SCHWEERS, JR., AND HARRINGTON, SCHWEERS, DATILLO & MCCLELLAND, P.C., | : | |
| Appellees | : | No. 1170 WDA 2014 |

Appeal from the Order of July 14, 2014
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 07-025594

BEFORE:  BOWES, OLSON AND STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 1, 2015**

Appellants, Aldis Rutyna and Mary Jane Rutyna, appeal from the order entered on July 14, 2014, which granted the motion for summary judgment that was filed on behalf of William S. Schweers, Jr. (hereinafter "Attorney Schweers") and Harrington, Schweers, Datillo & McClelland, P.C. (hereinafter "the Law Firm").  We vacate the trial court's order and remand.

We previously explained the underlying facts of this case.  We quote, in part, from our prior factual summary:

> On May 18, 2006, [Attorney] Schweers filed a medical malpractice complaint on behalf of [Appellants, naming, as defendants, William P. Donaldson, III, M.D. and the University of Pittsburgh Medical Center – Presbyterian.  The complaint alleged] that Mr. Rutyna was injured as a result of negligence during surgery.  After [Attorney] Schweers did

---

*Retired Senior Judge assigned to the Superior Court.

not file a certificate of merit, a judgment of *non pros* was entered and the case [was] dismissed.

On December 5, 2007, [Appellants] filed a complaint against [Attorney Schweers and the Law Firm]. In that complaint, [Appellants] alleged that [Attorney] Schweers committed professional [malpractice] when he failed to file the required certificate of merit, resulting in the entry of a *non pros* judgment against [Appellants]. [Appellants] also alleged that [Attorney] Schweers made misrepresentations to them to conceal his misconduct and to prevent [Appellants] from seeking a different attorney. In their complaint, [Appellants] raised claims of professional negligence, fraudulent misrepresentation, negligent misrepresentation, breach of fiduciary duty, and breach of contract against [Attorney] Schweers. [Appellants] alleged *respondeat superior*/vicarious liability and Unfair Trade Practices and Consumer Protection Law violations against the Law Firm. A certificate of merit for each defendant was attached to the complaint.

[Attorney Schweers and the Law Firm] filed preliminary objections. On January 18, 2011, [Appellants] filed an amended complaint. On January 19, 2011, the trial court struck the amended complaint, and dismissed with prejudice from the original complaint the counts of fraudulent and negligent misrepresentation and breach of fiduciary duty against [Attorney] Schweers, and violations of the Unfair Trade Practices and Consumer Protection Law against the Law Firm. The order also struck several paragraphs from the complaint that alleged that [Attorney] Schweers made misrepresentations to [Appellants. The result of the trial court's order was that only Appellants' claims for professional negligence, breach of contract, and vicarious liability remained pending before the trial court].

***Rutyna v. Schweers***, 100 A.3d 325 (Pa. Super. 2014) (unpublished

memorandum) at 1-3 (internal footnotes omitted) (internal italics added).

On September 11, 2012, Attorney Schweers and the Law Firm filed a

motion for summary judgment. As the movants claimed, during the

- 2 -

underlying medical malpractice action, Attorney Schweers sought to obtain an expert medical report from Dr. Lance Perling. However, the movants claimed, Dr. Perling "prepared a written report which yielded a negative opinion[; in particular, Dr. Perling concluded] that Dr. Donaldson and UPMC were not responsible for [Mr. Rutyna's] condition."[1,2] Motion for Summary Judgment, 9/11/12, at ¶ 11 (internal emphasis omitted).

Attorney Schweers and the Law Firm noted that, for Appellants to prevail on their legal malpractice claim, Appellants must be able to prove the following three elements: "(1) [t]he employment of the attorney or other basis for duty; (2) [t]he failure of the attorney to exercise ordinary skill and knowledge; and (3) [t]hat such negligence was the proximate cause of damage to the plaintiff." *Rizzo v. Haines*, 555 A.2d 58, 65 (Pa. 1989); *see* Motion for Summary Judgment, 9/11/12, at ¶ 35. According to the movants, since Attorney Schweers could not obtain a favorable expert opinion from Dr. Perling to support the underlying medical malpractice

_____

[1] Attorney Schweers and the Law Firm attached a copy of Dr. Perling's letter to their summary judgment motion. Motion for Summary Judgment, 9/11/12, at "Exhibit 5."

[2] Within their summary judgment motion, Attorney Schweers and the Law Firm claimed: "[Attorney Schweers and the Law Firm] have now obtained two negative expert reviews on the case, one oral and one in writing." Motion for Summary Judgment, 9/11/12, at ¶ 24. However, the summary judgment motion did not specify who provided the "oral" expert review – and there was no documentation to support the statement regarding an "oral" expert review.

action, Attorney Schweers could not file a certificate of merit in the underlying case. Therefore, the movants claimed, Appellants are unable to sustain their burden of production in this legal malpractice case, as Appellants cannot establish that Attorney Schweers failed to "exercise ordinary skill and knowledge" when he failed to file a certificate of merit in the underlying medical malpractice case. *Id.* at ¶¶ 41-42.

Moreover, within the summary judgment motion, Attorney Schweers and the Law Firm claimed that Appellants are unable to prove that the alleged negligence was the proximate cause of their damages, as: "[Appellants] have not presented any particular piece of evidence to prove that [Attorney Schweers] did not obtain at least one medical expert report" and it was speculative to conclude that Attorney Schweers should have found "a doctor that was willing to opine that [Appellants'] case had merit." *Id.* at ¶¶ 46-54.

Finally, Attorney Schweers and the Law Firm claimed that they were entitled to summary judgment because Appellants refused to pay for their case to be reviewed by other experts. *See id.* at ¶¶ 16-17.

On December 11, 2012, Appellants filed their response to the summary judgment motion. Within their response, Appellants: denied the movants' declaration that Dr. Perling's review constituted a comprehensive, expert review of their claim, as Dr. Perling had reviewed the case before all of Mr. Rutyna's relevant medical information was collected; claimed that Attorney Schweers "never submitted [Mr. Rutyna's] medical records and

- 4 -

other documentation to any expert medical witness or requested a case evaluation therefrom;" claimed that "[Attorney Schweers'] failure to file a certificate of merit was not the result of not being able to find a suitable medical review[, i]nstead, it was the result of [Attorney Schweers'] failure to adequately seek one;" asserted that Attorney Schweers had actively misled them as to the status and condition of their case; claimed that Attorney Schweers promised them that he would "handle" the fees associated with procuring an expert opinion; and, claimed that Attorney Schweers and the Law Firm promised to pay all of the litigation costs associated with the medical malpractice action.[3]  Appellants' Response to Motion for Summary Judgment, 12/11/12, at ¶¶ 11, 16-17, 22, 31, 32, 38, 41, 51, 52, 53, and 54.

Further, even though Attorney Schweers and the Law Firm did not move for summary judgment on the ground that Appellants failed to produce an expert medical report to support their action, Appellants attached an expert medical report to their response.  The report was authored by Dr. Mark R. Foster and, within the report, Dr. Foster opined that Dr. Donaldson had deviated from the standard of care during and following Mr. Rutyna's

_____

[3] Appellants also denied the movants' unsupported claim that Attorney Schweers "obtained two expert reports."  Appellants' Response to Motion for Summary Judgment, 12/11/12, at ¶ 41.

surgery, and that the deviations from the standard of care caused harm to

Mr. Rutyna. Specifically, Dr. Foster opined:

> Dr. Donaldson's care [was] significantly below the standard of care. First, he damaged the important lower sacral nerves, as they passed by his operative sight without documenting – or apparently being aware of – the damage that he had done. Not only was Dr. Donaldson unable to describe what happened, but he does not even describe the closure of the dural net, of which he certainly was aware. Further, he seems to be taken by surprise when the January 29, 2004 urinary retention presents itself. Although the discharge sheet talks about a transient neurologic injury, this is a permanent injury which Dr. Donaldson did not recognize when he caused the injury. He still did not recognize the injury on [] January 29, 2004 and then attributed the problem to operative stretch. An MRI was performed to rule out cauda equine syndrome because Dr. Donaldson still did not recognize the neurologic permanent deficit that he had caused.
>
> Consequently, Dr. Donaldson not only deviated from the standard of care during surgery, he also deviated in the standard of care by failing to recognize and care for the injury caused. He further suggests in his notes (some of which are progress notes from the same day as the incident) that muscle strength was five out of five, but the resident notes demonstrate some failure of full recovery despite decadron, which was given for the motor weakness (not even recognizing the neurologic damage eliminating continence), and the admission to physical medicine and rehabilitation notes demonstrate "a significant diminish of the right extensor halluces longus, EHL which is L5 nerve root and would be involved with the L4-5 disc" as being the grade of 2 out of 5, which is less than anti-gravity strength, as anti-gravity strength is 3 out of 5.
>
> To a reasonable degree of medical certainty, Dr. Donaldson caused an intraoperative dural leak which damaged the sacral nerve roots. This damage to the sacral nerve roots caused permanent neurologic damages and eliminated bowel and bladder continence, which were not even

recognized by the attending surgeon performing the procedure. In addition, prolonged retraction damaged the L3 nerve roots, which had been normal on EMG, approximately six months later.

Report of Dr. Mark R. Foster, dated 2/28/08, at 2-3 (attached as "Exhibit 13" to Appellants' Response to the Motion for Summary Judgment).

Within Appellants' response, Appellants also averred that, after their medical malpractice action was dismissed, they retained a new attorney and their new counsel "was easily able to obtain" a favorable expert medical report to support their medical malpractice claim. Appellants' Response to Motion for Summary Judgment, 12/11/12, at ¶ 52.

Apparently, oral argument on the summary judgment motion occurred on December 17, 2012. **See** Scheduling Order, 11/21/12, at 1. Following oral argument, counsel for Attorney Schweers and the Law Firm hand-delivered a letter to the trial judge. In relevant part, the letter reads:

I am asking the court to grant summary judgment for [Appellants'] failure to proffer an expert report establishing a breach of a standard of care by the lawyer. This is a 2007 docket case (six years old) and [Appellants] have had ample time to secure an expert to establish a breach of a standard of care.

Attorney Schweers' and the Law Firm's Letter to the Trial Judge, dated 12/17/12, at 1.

Even though Attorney Schweers and the Law Firm did **not** explicitly move for summary judgment on the ground that Appellants "fail[ed] to proffer an expert report establishing a breach of a standard of care by the lawyer," the trial court signed the following order:

AND NOW, to wit, this 22nd day of [February], 2013, upon consideration of [Attorney Schweers' and the Law Firm's] Motion for Summary Judgment it is hereby ORDERED, ADJUDGED and DECREED that [Appellants are to] provide an expert report as to liability within 45 days. Failure to do so will result in the grant of summary judgment on *praecipe* of [Attorney Schweers and the Law Firm].

Trial Court Order, dated 2/22/13, at 1.

As this Court has explained:

On April 9, 2013, [Attorney Schweers and the Law Firm] filed a *praecipe* to enter summary judgment, because [Appellants] had [allegedly] not complied with the [trial court's] February 22[, 2013] order. On April 10, [2013, Appellants'] counsel delivered a letter to the [trial] court, indicating that [Appellants' counsel had not] received the February 22[, 2013] order. On April 30, 2013, after hearing argument, the [trial] court entered summary judgment in favor of [Attorney Schweers and the Law Firm]. On May 3, 2013, [Appellants] filed a notice of appeal [to the Superior Court and, within their brief to this Court, Appellants claimed that the trial court erred in granting summary judgment to Attorney Schweers and the Law Firm because "the [trial court] docket did not reflect that notice was given of the entry of the order directing [Appellants] to provide an expert report, and [Appellants], in fact, never received the order."]

*Rutyna v. Schweers*, 100 A.3d 325 (Pa. Super. 2014) (unpublished memorandum) at 4 (internal footnotes and some capitalization omitted) (internal italics added).

On March 31, 2014, this Court vacated the trial court's summary judgment order and remanded the case for further proceedings. As we explained, "[o]ur review of the docket show[ed] that there [was] no notation [on the docket, indicating that the February 22, 2013] order was sent to the

parties[,] as required by [Pennsylvania Rule of Civil Procedure] 236." *Id.* at 8. Therefore, we held, since the February 22, 2013 order was never properly entered, the grant of summary judgment to Attorney Schweers and the Law Firm was erroneous. *Id.* at 9.

On remand, Appellants promptly filed an expert legal report to support their legal malpractice claim. The report, which was authored by Dennis M. Blackwell, Esquire, declared in relevant part:

> [] based on my experience, it is my opinion, expressed to a reasonable degree of professional certainty, that the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client make some effort to obtain an expert witness to support a certificate of merit, and that an attorney that did not contact so much as a single potential expert had breached that duty of care.
>
> It is also my opinion, expressed to a reasonable degree of professional certainty, that [] the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client contact more than one potential expert to support a certificate of merit, and that an attorney that only contacted a single potential expert had breached that duty of care.
>
> It is critical that I clarify what my opinion **IS NOT**. You did not ask me to opine, nor do I opine that [] the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client continue to search for an expert to support a certificate of merit, until he finds one.
>
> On a related issue, it is my opinion, expressed to a reasonable degree of professional certainty, that [Attorney] Schweers' conduct in terms of his failure to promptly and accurately report to his clients, [Appellants], developments

in the search for an expert, did not meet the applicable standard of care.

Report of Dennis M. Blackwell, Esquire, dated 4/7/14, at 6 (emphasis in original).

On April 17, 2014, Attorney Schweers and the Law Firm filed a self-titled "renewed motion for summary judgment." Within this filing, Attorney Schweers and the Law Firm claimed that Attorney Blackwell's expert legal report was insufficient to defeat their summary judgment motion because: 1) "no legal authority exists to support [Attorney Blackwell's] assertion . . . that the standard of care in Pennsylvania in 2006 required an 'attorney handling a medical malpractice case for a client [to] contact more than one potential expert to support a certificate of merit, and that an attorney that only contacted a single potential expert had breached that duty of care;'" 2) Attorney Blackwell did not opine that "the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client continue to search for an expert to support a certificate of merit, until he finds one;" and, 3) Attorney Schweers "obtained . . . two expert reviews that did not support [Appellants'] position." Renewed Motion for Summary Judgment, 4/17/14, at ¶¶ 40-54.

By order entered on July 14, 2014, the trial court again granted summary judgment against Appellants and in favor of Attorney Schweers and the Law Firm. Within the trial court's memorandum order, the trial court declared that Attorney Blackwell's expert legal report was insufficient to defeat the summary judgment motion because Attorney Blackwell refused

to opine that "the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client continue to search for an expert to support a certificate of merit, until he finds one." Trial Court Order, 7/14/14, at 2.

Appellants filed a timely notice of appeal and Appellants now raise the following claims to this Court:[4]

> [1.] Did the [trial] court err in citing only a small portion of the expert report, when a reading of the report as a whole clearly set forth sufficient grounds to support a finding that [Attorney] Schweers failed to comply with the standard of care?
>
> [2.] Did the trial court commit reversible error when, in deciding [the] summary judgment motion, it removed from the fact-finder the question of the weight to be accorded [Appellants'] legal expert opinion and purported to make that determination, itself?
>
> [3.] Did the [trial] court err in making certain findings of fact, when those facts had clearly been disputed by [Appellants]?

Appellants' Brief at 4 (some internal capitalization omitted).

We note:

> Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only

_____

[4] The trial court did not order Appellants to file a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), and Appellants did not file a Rule 1925(b) statement on their own initiative.

where it is established that the court committed an error of law or abused its discretion.

Summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party and resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Only when the facts are so clear that reasonable minds could not differ can a trial court properly enter summary judgment.

*Englert v. Fazio Mech. Serv.'s, Inc.*, 932 A.2d 122, 124 (Pa. Super. 2007) (internal citations omitted).

Appellants claim that the trial court erred when it granted the summary judgment motion that was filed by Attorney Schweers and the Law Firm. As Appellants first claim, in granting the summary judgment motion, the trial court necessarily "disregarded [the] opinions expressed in [Attorney] Blackwell's [expert] report that unquestionably support[ed] [Appellants'] claims." Appellant's Brief at 20 (some internal capitalization omitted). According to Appellants, the trial court attempted to support its order by citing to a superfluous statement within Attorney Blackwell's expert report and the trial court then erroneously based its order upon the superfluous statement. *Id.* We agree.

As this Court has explained:

Our Supreme Court has held that "a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a 'case within a case')."

- 12 -

> ***Kituskie v. Corbman***, 714 A.2d 1027, 1030 (Pa. 1998).
> To prove [a legal] malpractice action, the plaintiff "must
> initially establish by a preponderance of the evidence that
> he would have recovered a judgment in the underlying
> action." ***Id.*** "It is only after the plaintiff proves he would
> have recovered a judgment in the underlying action that
> [he] can then proceed with proof that the attorney he
> engaged to prosecute . . . the underlying action was
> negligent in the handling of the underlying action and that
> negligence was the proximate cause of the plaintiff's loss
> since it prevented [him] from being properly compensated
> for [his] loss." ***Id.*** To establish [the] legal malpractice
> claim, the plaintiff must satisfy the following three-prong
> test[:]
>
> > 1) [E]mployment of the attorney or other basis for a
> > duty;
> >
> > 2) the failure of the attorney to exercise ordinary skill
> > and knowledge; and
> >
> > 3) that such negligence was the proximate cause of
> > damage to the plaintiff.

***Sokolsky v. Eidelman***, 93 A.3d 858, 862 (Pa. Super. 2014) (internal

corrections omitted).

Within Appellants' complaint, Appellants alleged that Attorney

Schweers was professionally negligent because he failed to timely file a

certificate of merit in the underlying medical malpractice case and because,

during the underlying action, Attorney Schweers misrepresented the status

of Appellants' case "to conceal his misconduct and/or preclude [Appellants]

from retaining another attorney." Appellants' Complaint, 12/5/07, at ¶¶ 17-

19. At the close of discovery, Attorney Schweers and the Law Firm filed a

summary judgment motion, wherein they raised the following grounds for

relief: Attorney Schweers obtained a negative expert opinion from Dr.

Perling and, therefore, Attorney Schweers was unable to file a certificate of merit in the underlying medical malpractice action; Attorney Schweers obtained a second negative expert opinion, from an unidentified source, in the underlying action; it was speculative to conclude that Attorney Schweers should have found "a doctor that was willing to opine that [Appellants' medical malpractice] case had merit;" and, Appellants refused to pay for their medical malpractice case to be reviewed by other experts.

Appellants responded to the summary judgment motion by: claiming that Dr. Perling's review of the case was necessarily incomplete, as Dr. Perling had reviewed the case before all of Mr. Rutyna's relevant medical information was collected; denying Attorney Schweers' unsupported statement that he received a second negative expert opinion in the medical malpractice case; and, claiming that Attorney Schweers promised them that he would advance the fees necessary to obtain further expert medical reviews and that the firm would pay for all litigation expenses. Further, Appellants filed an expert legal report, authored by Attorney Blackwell, wherein Attorney Blackwell declared:

> [] based on my experience, it is my opinion, expressed to a reasonable degree of professional certainty, that the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client make some effort to obtain an expert witness to support a certificate of merit, and that an attorney that did not contact so much as a single potential expert had breached that duty of care.

It is also my opinion, expressed to a reasonable degree of professional certainty, that [] the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client contact more than one potential expert to support a certificate of merit, and that an attorney that only contacted a single potential expert had breached that duty of care.

It is critical that I clarify what my opinion **IS NOT**. You did not ask me to opine, nor do I opine that [] the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client continue to search for an expert to support a certificate of merit, until he finds one.

On a related issue, it is my opinion, expressed to a reasonable degree of professional certainty, that [Attorney] Schweers' conduct in terms of his failure to promptly and accurately report to his clients, [Appellants], developments in the search for an expert, did not meet the applicable standard of care.

Report of Dennis M. Blackwell, Esquire, dated 4/7/14, at 6 (emphasis in original).

Notwithstanding the fact that the above-quoted, penultimate paragraph in Attorney Blackwell's report was superfluous, the trial court based its summary judgment ruling upon that superfluous statement. Specifically, the trial court granted Attorney Schweers' and the Law Firm's motion for summary judgment because Attorney Blackwell **did not** render an opinion on whether "the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client continue to search for an expert to support a certificate of merit, until he finds one." Trial Court Opinion, 7/14/14, at 2.

The trial court's reasoning in this case was erroneous, given that Attorney Blackwell's statement in the above-quoted, second-to-last paragraph neither added to nor detracted from the opinions contained in his expert report. Further, when Attorney Blackwell's actual, stated opinions in the expert report are combined with Appellants' response to the summary judgment motion, it is evident that the trial court erred when it granted summary judgment to Attorney Schweers and the Law Firm. Indeed, when the record is viewed in the light most favorable to Appellants, the record demonstrates that Attorney Schweers contacted, at most, one expert – Dr. Perling – to support the certificate of merit in the underlying case.[5] However, as Attorney Blackwell opined, when an attorney contacts only one potential expert to support a certificate of merit and then receives a negative response, the attorney breached the standard of care he owes to his client. In the words of Attorney Blackwell:

> the standard of care prevailing in Western Pennsylvania in 2006 required that an attorney handling a medical malpractice case for a client contact more than one potential expert to support a certificate of merit, and that an attorney that only contacted a single potential expert had breached that duty of care.

_____

[5]As stated, the record, viewed in a light most favorable to the Appellant, leads to the conclusion that Attorney Schweers contacted only one potential medical expert. Attorney Schweers and the Law Firm refute this and claim that a second expert was contacted (a factual allegation denied by the Appellants). Thus, at a minimum, a genuine issue of material fact exists which makes summary judgment inappropriate.

Report of Dennis M. Blackwell, Esquire, dated 4/7/14, at 6.

Attorney Blackwell's stated opinion clearly demonstrates that there is a genuine issue of material fact as to whether Attorney Schweers breached his duty of care when he contacted only one potential expert to support the certificate of merit. The trial court's ruling to the contrary was erroneous.[6, 7, & 8]

_____

[6] The trial court also erred in granting summary judgment to Attorney Schweers and the Law Firm, as Appellants' professional malpractice claim was not limited to the single contention that Attorney Schweers was negligent in contacting only one potential expert. Rather, within Appellants' complaint, Appellants also claimed that Attorney Schweers was professionally negligent because he misrepresented the status of Appellants' case "to conceal his misconduct and/or preclude [Appellants] from retaining another attorney." Appellants' Complaint, 12/5/07, at ¶¶ 17-19. Moreover, Appellants claimed that they suffered harm as a result of Attorney Schweers' misrepresentations and concealments and Appellants attached an expert report from Attorney Blackwell, wherein Attorney Blackwell specifically opined that Attorney Schweers' misrepresentations and concealments constituted a breach of an attorney's duty of care. Thus, Appellants established that there was a genuine issue of material fact as to whether Attorney Schweers was professionally negligent when he, allegedly, misrepresented the status of Appellants' case "to conceal his misconduct and/or preclude [Appellants] from retaining another attorney." *Id.*

[7] According to Appellants' second claim on appeal, the trial court erred when it "refus[ed] to defer to the conclusions set forth in [Appellants'] expert report." Appellants' Brief at 20-22. We will not independently discuss this claim, as it is subsumed within Appellants' first claim on appeal. ***See also Summers v. Certainteed Corp.***, 997 A.2d 1152, 1161 (Pa. 2010) ("[i]t has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact").

Further, although this Court may affirm a trial court's ruling upon any basis, in this case there was simply no basis upon which the trial court could have granted the summary judgment motion that was filed by Attorney Schweers and the Law Firm. Therefore, we vacate the trial court's order and remand for further proceedings.

Order vacated. Case remanded. Jurisdiction relinquished.

Judge Bowes joins this memorandum.

Judge Strassburger files a Concurring Statement.

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[8] Within Appellants' third claim on appeal, Appellants contend that the trial court is biased against them. Appellants thus request this Court to instruct that, on remand, a different trial judge hear the case. Appellants' Brief at 28. In support of their claim, Appellants note that, within the trial court's factual recitation to this Court, the trial court acted in contravention of its standard of review by purporting to resolve two disputed factual issues against Appellants and in favor of Attorney Schweers and the Law Firm. *Id.* at 22-24. Further, Appellants note: that the trial court initially "dismissed [Appellants' c]omplaint because [Appellants] had not filed an expert report, notwithstanding [Appellants' counsel's] repeated protests that they had never received the order telling them to do so and additionally pointing out that the docket did not reflect that the order had been mailed" and that the trial court "complete[ly] disregard[ed] the opinions stated in [Attorney Blackwell's] expert report in favor of a non-opinion found in that report, as a basis for dismissing this case a second time." *Id.* at 27 (internal capitalization omitted). However, this Court lacks authority to remove a judge from a case. Such power rests solely with our High Court. *Reilly v. Southeastern Pa. Transp. Auth.,* 489 A.2d 1291 (1985). *See also Commonwealth v. Whitmore*, 912 A.2d 827 (Pa. 2006).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:4/1/2015